# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION, AS RECEIVER FOR CARDINAL GROWTH, L.P., | ) ) ) ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) ) |
| VINCENT JOHN GOODWIN, a.k.a. V. JOHN GOODWIN; GOLDCREST DISTRIBUTION, LTD., a British Virgin Islands corporation; JUNKEI LIN, a.k.a. LIN SHUNQING; DAVID LUBECK; JEANNE LUBECK; BRUCE RUZGIS; the TIMOTHY K. OZARK REVOCABLE TRUST; TIMOTHY K. OZARK; and MARK CARR, | ) *Assigned to:* ) ) ) ) ) ) ) |
| Defendants. | ) |

## **COMPLAINT**

The Plaintiff, United States Small Business Administration (the "SBA"), as Receiver for Cardinal Growth, L.P. (the "Receiver"), by the undersigned attorneys, complaining of the Defendants respectfully alleges and states as follows:

### **Nature of Action**

1.      The Receiver brings this action against the Defendants for breach of contract based upon the Defendants' failure to satisfy their respective obligations to make capital contributions to Cardinal Growth, L.P. ("Cardinal Growth"), under the Limited Partnership Agreement ("LPA") executed by Cardinal Growth and the Defendants.

### **Parties**

2.      The SBA was appointed Receiver for Cardinal Growth by Order of this Court, dated June 16, 2011 (the "Order"), in the case entitled, *United States of America v. Cardinal Growth, L.P.*, Civil Action No. 1:11-cv-04071, pending before the Hon. Ruben Castillo, for the purpose of, among other things, pursuing claims and causes of action available to Cardinal

Growth.  The Order provides, in pertinent part, as follows:

> The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of Cardinal under applicable state and federal law, by the Articles of Limited Partnership and By-Laws of said limited partnership, in addition to all powers and authority of a receiver at equity, and all powers and authority conferred upon the Receiver by the provisions of 15 U.S.C. § 687c and 28 U.S.C. § 754. . . .  The Receiver shall assume and control the operation of Cardinal and shall pursue and preserve all of its claims.

Consent Order of Receivership, ¶ 2.  A copy of the Order is attached hereto as Exhibit 1, which is incorporated herein by reference.

3.      The Receiver maintains its principal office at 1100 G. St. NW, 11th Floor Washington, DC 20005.

4.      Cardinal Growth, L.P. is a Delaware limited partnership which prior to the Order of June 16, 2011, had its principal office in Chicago, Illinois.

5.      At all times pertinent hereto, Cardinal Growth, LLC ("CGLLC"), a Delaware limited liability company, was the General Partner of Cardinal Growth.

6.      Defendant Mark Carr ("Carr") is an individual domiciled in Illinois and is therefore a citizen of Illinois.

7.      Defendant Goldcrest Distribution, Ltd. ("Goldcrest) is a British Virgin Islands corporation with its principal place of business in London, England.

8.      Defendant Vincent John Goodwin, a.k.a. V. John Goodwin ("Goodwin") is an individual domiciled in Indiana and is therefore a citizen of Indiana.

9.      Defendant Junkei Lin, a.k.a. Lin Shunqing ("Lin") is an individual domiciled in Hong Kong, a Special Administrative Region of the People's Republic of China, and is not lawfully admitted for permanent residence in the United States.  Accordingly, Defendant Lin is a citizen and subject of a foreign state.

10.     Defendant David Lubeck is an individual domiciled in Illinois and is therefore a citizen of Illinois.

11.     Defendant Jeanne Lubeck is an individual domiciled in Illinois and is therefore a citizen of Illinois.

12.     Defendant Bruce Ruzgis ("Ruzgis") is an individual domiciled in Florida and is therefore a citizen of Florida.

13.     Defendant Timothy K. Ozark Revocable Trust ("Trust") was formed in Illinois and has its principal place of business in Illinois.

14.     Defendant Timothy K. Ozark ("Ozark") is an individual domiciled in Illinois and is therefore a citizen of Illinois.  Defendant Ozark is the trustee of the Trust.

## Jurisdiction and Venue

15.     This Court has subject matter jurisdiction of this action pursuant to the Order, by its general equitable powers, and under 28 U.S.C. §§ 754 and 1367, as this action is ancillary to the receivership proceeding referenced in Paragraph 2 above.

16.     Venue of this action is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §§ 754 and 1391(b)(2), as this proceeding is ancillary to the receivership case referenced in Paragraph 2 above, and a substantial portion of the events and omissions giving rise to the claim occurred in this district.

## Background

17.     A true and correct copy of the LPA has been attached hereto as Exhibit 2, which is incorporated herein by reference.

18.     Section 1.05(a) of the LPA provides,

No person may be admitted as a General Partner or Private Limited Partner without subscribing and delivering to the Partnership a counterpart of this Agreement, or other written instrument, which sets forth:

(i)      the name and address of the Partner,

(ii)     the Commitment of the Partner, and

(iii)    the agreement of the Partner to be bound by the terms of this Agreement.

19.    Section 1.01 of the LPA defines "Commitments" as "the capital contributions to the Partnership that the Preferred Limited Partners have made and the other Partners have made or are obligated to make to the Partnership. The amounts and terms of the Commitments of the General Partner, the Private Limited Partners, and the Preferred Limited Partners will be as stated in this Agreement."

20.    Section 5.01(a) of the LPA governs the Private Limited Partner's capital contributions. It provides, in pertinent part, "The Private Limited Partners and the General Partner commit to make capital contributions to the Partnership in the amounts set forth by their respective names on Exhibit 'A' attached to this Agreement."

21.    Section 5.02(b) of the LPA provides, in relevant part:

> Each Private Limited Partner that qualifies as an Institutional Investor shall not be obligated to make any initial capital contribution to the Partnership. To the extent that any such Private Limited Partner does not make any initial capital contribution, or makes a capital contribution in an amount less than the full amount of such Private Limited Partner's Commitment, such Private Limited Partner shall pay the remaining balance of his Commitments in cash, in such amounts and at such times as shall be determined by the General Partner in its sole discretion, and each payment shall be made upon not less than twenty (20) days' prior notice from the General Partner, which notice shall specify the date such payment shall be due and the percentage of the Private Limited Partners' Commitments then due. Such Private Limited Partners shall not be obligated to provide an irrevocable credit to secure their obligation to contribute the unpaid portion of their Commitments.

22.    Section 5.02(c) of the LPA provides, in relevant part:

> Each Private Limited Partner that does not qualify as an Institutional Investor shall be obligated to pay the full amount of its capital commitment as its initial capital contribution. However, such individual Private Limited

Partners may elect to fulfill this obligation by providing an irrevocable letter of credit equal to the unpaid portion of its Contribution and such other information as the SBA may require. Subsequent to the date of the initial capital contribution, such Private Limited Partners who satisfy any portion of their obligation under this Section 5.02(c) with an irrevocable letter of credit shall pay the remaining balance of their commitments in cash, in such amounts and at such times as shall be determined by the General Partner in its sole discretion, and each payment shall be made upon not less than twenty (20) days' prior notice from the General Partner, which notice shall specify the date such payment shall be due and the percentage of the Private Limited Partner's commitment due.

23.     Section 5.06(c) of the LPA provides, in pertinent part:

No Private Limited Partner or General Partner has any right to delay, reduce or offset any obligation to contribute capital to the Partnership called under this Section 5.06 by reason of any counterclaim or right to offset by the Partner or the Partnership against SBA or any Preferred Limited Partner.

24.     Section 5.07(b) of the LPA provides:

The Partnership shall not enter into any agreement (whether oral or written), release or settlement with any Partner or take any action under any provision of this Agreement, which defers, reduces, or terminates the obligations of any such Partner to make contributions to the capital of the Partnership, or commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation, and no such agreement, release, settlement or action taken under any provision of this Agreement shall be effective with respect to the Partnership or any such Partner, without the prior written (except as provided in Section 5.07(d)) consent of the SBA.

25.     Section 5.07(c) of the LPA provides:

Unless SBA has given its prior consent or the provisions of Section 5.07(d) have become applicable, the Partnership will not (i) take any action (including entering into any agreement (whether oral or written), release or settlement with any Partner) which defers, reduces, or terminates the obligations of the Partner to make contributions to the capital of the Partnership, or (ii) commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation. Without the consent of SBA (including SBA's deemed consent under Section 5.07(d)) no such agreement, release, settlement or action taken will be effective with respect to the Partnership or any Partner.

26.     Section 5.11 of the LPA provides:

In the event that any Private Limited Partner fails to make a contribution

required under this Agreement within thirty (30) days after the date such contribution is due, then the General Partner may, in its sole discretion, elect to charge such Private Limited Partner interest at an annual rate equal to fifteen percent (15%) on the amount due from the date such amount became due until the earlier of (a) the date on which such payment is received by the Partnership or (b) the date of any notice given to such Private Limited Partner by the General Partner pursuant to Sections 5.13, 5.14 or 5.15.

27. Cardinal Growth performed its own contractual duties under the LPA.

## COUNT I:
## BREACH OF CONTRACT

### (Defendant Vincent John Goodwin, a.k.a. V. John Goodwin)

28. The Receiver incorporates by reference Paragraphs 1 through 27, above, as though fully set forth herein.

29. Prior to October 15, 2002, Robert J. Bobb ("Bobb") obtained a $2,500,000 (two million five hundred thousand dollars) limited partnership interest in Cardinal Growth, pursuant to which Bobb agreed to fund such limited partnership interest by way of a $2,500,000 (two million five hundred thousand dollars) capital commitment.

30. On or about October 15, 2002, Bobb and Defendant Goodwin entered into an initial assignment agreement ("First Assignment") wherein Defendant Goodwin assumed a $750,000 (seven hundred fifty thousand dollars) share of Bobb's aggregate commitment, of which assumed share $375,000 (three hundred seventy five thousand dollars) remained, at that time, unfunded. The October 15, 2002 assignment documentation evidencing the First Assignment has been attached hereto as part of Group Exhibit 3, which is incorporated herein by reference.

31. Contemporaneous with the First Assignment, Defendant Goodwin executed a Counterpart Signature Page to the LPA ("First Counterpart Signature Page"). The First Counterpart Signature Page, signed by Defendant Goodwin and evidencing Defendant Goodwin's commitment to make a capital contribution to Cardinal Growth in the amount of $375,000 (three

hundred seventy five thousand dollars), is attached hereto as part of Group Exhibit 3.

32.     On or about October 18, 2005, Bobb and Defendant Goodwin entered into a second assignment agreement ("Second Assignment") wherein Defendant Goodwin assumed an additional $250,000 (two hundred fifty thousand dollars) share of Bobb's aggregate commitment, of which $62,500 (sixty two thousand five hundred dollars) remained, at that time, unfunded. The October 18, 2005 assignment documentation evidencing the Second Assignment has been attached hereto as part of Group Exhibit 3.

33.     Contemporaneous with the Second Assignment, Defendant Goodwin executed a Counterpart Signature Page to the LPA ("Second Counterpart Signature Page"). The Second Counterpart Signature Page, signed by Defendant Goodwin and evidencing Defendant Goodwin's commitment to make a capital contribution to Cardinal Growth in the amount of $250,000 (two hundred fifty thousand dollars), is attached hereto as part of Group Exhibit 3.

34.     The books and records of Cardinal Growth reflect the amount that each Private Limited Partner actually paid toward his capital contribution commitment.

35.     The books and records of Cardinal Growth reveal that Defendant Goodwin has not made the total capital contribution he agreed to make to Cardinal Growth.

36.     The books and records of Cardinal Growth show that, as to Cardinal Growth, Defendant Goodwin has a total unfunded capital commitment amount of $250,000 (two hundred fifty thousand dollars).

37.     In order to ensure Defendant Goodwin paid his full capital commitment, Cardinal Growth's General Partner and the Receiver issued unfunded capital commitment demand letters, dated April 11, 2011; September 22, 2011; and March 5, 2012, demanding payment in the amount of $250,000 (two hundred fifty thousand dollars) from Defendant Goodwin.

38.     Despite the demands referenced in the immediately preceding Paragraph,

Defendant Goodwin has not fully paid his total capital commitment to the Receiver.

39.     Defendant Goodwin has breached the LPA by failing to pay to Cardinal Growth the entire amount he agreed to pay under the LPA.

40.     As a direct and proximate result of Defendant Goodwin's breach of the LPA, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant Goodwin, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against the defendant Private Limited Partner, Vincent John Goodwin, for his unfunded capital commitment of $250,000 (two hundred fifty thousand dollars)  pursuant to the capital call notice plus fifteen percent (15%) interest from April 27, 2011, together with costs, attorneys fees, and such other relief as this Court deems just and proper under the circumstances.

## COUNT II:
## BREACH OF CONTRACT
### *(Defendant Goldcrest Distribution, Ltd.)*

41.     The Receiver incorporates by reference Paragraphs 1 through 27, above, as though fully set forth herein.

42.     On or about December 16, 1999, Defendant Goldcrest entered into the LPA, by which it agreed to pay $250,000.00 (two hundred fifty thousand) for a limited partnership interest in Cardinal Growth.

43.     Defendant Goldcrest committed to make a capital contribution to Cardinal Growth in the amount of $250,000.00 (two hundred fifty thousand dollars) as set forth in Exhibit "A" to the LPA.

44.     The Counterpart Signature Page to the LPA signed by Darren Lee Colquitt on behalf of Goldcrest, and evidencing Defendant Goldcrest's commitment to make a capital

-8-

contribution to Cardinal Growth in the amount of $250,000.00 (two hundred fifty thousand), is attached hereto as Exhibit 4, which is incorporated herein by reference.

45. The books and records of Cardinal Growth reflect the amount that each Private Limited Partner actually paid toward its capital contribution commitment.

46. The books and records of Cardinal Growth reveal that Defendant Goldcrest has not made the full capital contribution it agreed to make to Cardinal Growth as set forth in Exhibit "A" to the LPA.

47. The books and records of Cardinal Growth show that, as to Cardinal Growth, Defendant Goldcrest has an unfunded capital commitment amount of $62,500.00 (sixty two thousand five hundred dollars).

48. In order to ensure Defendant Goldcrest paid its full capital commitment in accordance with Exhibit "A" of the LPA, Cardinal Growth's General Partner and the Receiver issued unfunded capital commitment demand letters, dated April 11, 2011; September 22, 2011; and March 5, 2012, demanding payment in the amount of $62,500.00 (sixty two thousand five hundred dollars) from Defendant Goldcrest.

49. Despite the demands referenced in the immediately preceding Paragraph, Defendant Goldcrest has not fully paid its capital commitment to the Receiver.

50. Defendant Goldcrest has breached the LPA by failing to pay to Cardinal Growth the entire amount it agreed to pay under the LPA.

51. As a direct and proximate result of Defendant Goldcrest's breach of the LPA, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant Goldcrest, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against the defendant Private Limited Partner,

Goldcrest Distribution, Ltd., for its unfunded capital commitment of $62,500.00 (sixty two thousand five hundred dollars) pursuant to the capital call notice plus fifteen percent (15%) interest from April 27, 2011, together with costs, attorneys fees, and such other relief as this Court deems just and proper under the circumstances.

**COUNT III:**
**BREACH OF CONTRACT**
***(Defendant Junkei Lin, a.k.a. Lin Shunqing)***

52.     The Receiver incorporates by reference Paragraphs 1 through 27, above, as though fully set forth herein.

53.     On or about November 24, 1999, Defendant Lin entered into the LPA, by which he agreed to pay $500,000.00 (five hundred thousand dollars) for a limited partnership interest in Cardinal Growth.

54.     Defendant Lin committed to make a capital contribution to Cardinal Growth in the amount of $500,000.00 (five hundred thousand dollars) as set forth in Exhibit "A" to the LPA.

55.     The Counterpart Signature Page to the LPA signed by Defendant Lin, and evidencing Defendant Lin's commitment to make a capital contribution to Cardinal Growth in the amount of $500,000.00 (five hundred thousand dollars), is attached hereto as Exhibit 5, which is incorporated herein by reference.

56.     The books and records of Cardinal Growth reflect the amount that each Private Limited Partner actually paid toward his capital contribution commitment.

57.     The books and records of Cardinal Growth reveal that Defendant Lin has not made the full capital contribution he agreed to make to Cardinal Growth as set forth in Exhibit "A" to the LPA.

58.     The books and records of Cardinal Growth show that, as to Cardinal Growth, Defendant Lin has an unfunded capital commitment amount of $125,000.00 (one hundred twenty

five thousand dollars).

59.     Because Defendant Lin failed to pay his capital commitment in accordance with Exhibit "A" of the LPA, Cardinal Growth's General Partner and the Receiver have issued unfunded capital commitment demand letters, dated April 11, 2011; September 22, 2011; and March 5, 2012, demanding payment in the amount of $125,000.00 (one hundred twenty five thousand dollars) from Defendant Lin.

60.     Despite the Demands referenced in the immediately preceding Paragraph, Defendant Lin has not fully paid his capital commitment to the Receiver.

61.     Defendant Lin has breached the LPA by failing to pay to Cardinal Growth the entire amount he agreed to pay under the LPA.

62.     As a direct and proximate result of Defendant Lin's breach of the LPA, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant Lin, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against the defendant Private Limited Partner, Junkei Lin, a.k.a. Lin Shunqing, for his unfunded capital commitment of $125,000.00 (one hundred twenty five thousand dollars) pursuant to the capital call notice plus fifteen percent (15%) interest from April 27, 2011, together with costs, attorneys fees, and such other relief as this Court deems just and proper under the circumstances.

## COUNT IV:
## BREACH OF CONTRACT
### *(Defendants David Lubeck and Jeanne Lubeck)*

63.     The Receiver incorporates by reference Paragraphs 1 through 27, above, as though fully set forth herein.

64.     On or about November 15, 1999, Defendants David Lubeck and Jeanne Lubeck

(collectively, "the Lubeck Defendants") entered into the LPA, by which they agreed to pay $250,000.00 (two hundred fifty thousand dollars) for a limited partnership interest in Cardinal Growth.

65. The Lubeck Defendants committed to make a capital contribution to Cardinal Growth in the amount of $250,000.00 (two hundred fifty thousand dollars) as set forth in Exhibit "A" to the LPA.

66. The Counterpart Signature Page to the LPA signed by the Lubeck Defendants, and evidencing Defendants' commitment to make a capital contribution to Cardinal Growth in the amount of $250,000.00 (two hundred fifty thousand dollars), is attached hereto as Exhibit 6, which is incorporated herein by reference.

67. The books and records of Cardinal Growth reflect the amount that each Private Limited Partner actually paid toward their capital contribution commitment.

68. The books and records of Cardinal Growth reveal that the Lubeck Defendants have not made the full capital contribution they agreed to make to Cardinal Growth as set forth in Exhibit "A" to the LPA.

69. The books and records of Cardinal Growth show that, as to Cardinal Growth, the Lubeck Defendants have an unfunded capital commitment amount of $62,500.00 (sixty two thousand five hundred dollars).

70. In order to ensure the Lubeck Defendants paid their full capital commitment in accordance with Exhibit "A" of the LPA, Cardinal Growth's General Partner and the Receiver issued unfunded capital commitment demand letters, dated April 11, 2011; September 22, 2011; and March 5, 2012, demanding payment in the amount of $62,500.00 (sixty two thousand five hundred dollars) from the Lubeck Defendants.

71. Despite the demands referenced in the immediately preceding Paragraph, the

Lubeck Defendants have not fully paid their capital commitment to the Receiver.

72.     The Lubeck Defendants have breached the LPA by failing to pay to Cardinal Growth the entire amount they agreed to pay under the LPA.

73.     As a direct and proximate result of the Lubeck Defendants' breach of the LPA, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by the Lubeck Defendants, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against the defendant Private Limited Partners, David Lubeck and Jeanne Lubeck, for their unfunded capital commitment of $62,500.00 (sixty two thousand five hundred dollars) pursuant to the capital call notice plus fifteen percent (15%) interest from April 27, 2011, together with costs, attorneys fees, and such other relief as this Court deems just and proper under the circumstances.

**COUNT V:**
**BREACH OF CONTRACT**
***(Defendant Bruce Ruzgis)***

74.     The Receiver incorporates by reference Paragraphs 1 through 27, above, as though fully set forth herein.

75.     Prior to June 16, 2003, Cardinal Growth Corporation ("CGC") obtained a limited partnership interest in Cardinal Growth, pursuant to which CGC agreed to fund such limited partnership interest by way of a capital commitment.

76.     On or about June 16, 2003, CGC and Defendant Ruzgis entered into an assignment agreement ("Ruzgis Assignment") wherein Defendant Ruzgis assumed a $250,000 (seven hundred fifty thousand dollars) share of CGC's aggregate commitment, of which assumed share at least $100,000 (one hundred thousand dollars) remained, at that time, unfunded. The October 15, 2002 assignment documentation evidencing the Ruzgis Assignment has been attached hereto as Exhibit

7, which is incorporated herein by reference.

77.    As to the limited partnership share which he purchased, Defendant Bruce Ruzgis assumed CGC's commitment to pay the remaining $100,000 (one hundred thousand dollars) of the total $250,000.00 (two hundred fifty thousand dollar) share which he purchased.

78.    Pursuant to the commitment referenced in the immediately preceding paragraph, Defendant Bruce Ruzgis made a $12,500 payment on or about November 28, 2003, and a $25,000 payment, on or about August 3, 2004.

79.    The books and records of Cardinal Growth reflect the amount that each Private Limited Partner actually paid toward his capital contribution commitment.

80.    The books and records of Cardinal Growth reveal that Defendant Bruce Ruzgis has not made the full capital contribution he agreed to make to Cardinal Growth.

81.    The books and records of Cardinal Growth show that, as to Cardinal Growth, Defendant Ruzgis has an unfunded capital commitment amount of $62,500 (sixty two thousand five hundred dollars).

82.    In order to ensure that Defendant Ruzgis pay his full capital commitment to Cardinal Growth, Cardinal Growth's General Partner and the Receiver have issued unfunded capital commitment demand letters, dated April 11, 2011; September 22, 2011; and March 5, 2012, demanding payment in the amount of $62,500 (sixty two thousand five hundred dollars) from Defendant Bruce Ruzgis.

83.    Despite the Demands referenced in the immediately preceding Paragraph, Defendant Bruce Ruzgis has not fully paid his capital commitment to the Receiver.

84.    Defendant Bruce Ruzgis has breached the LPA by failing to pay to Cardinal Growth the entire amount demanded from him.

85.    As a direct and proximate result of Defendant Bruce Ruzgis's breach of the LPA,

Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant Bruce Ruzgis, lost interest on the money, and such other damages as may be hereafter discovered.

86.     WHEREFORE, Plaintiff demands judgment against the defendant Private Limited Partner, Bruce Ruzgis, for his unfunded capital commitment of $62,500 (sixty two thousand five hundred dollars) pursuant to the capital call notice plus fifteen percent (15%) interest from April 27, 2011, together with costs, attorneys fees, and such other relief as this Court deems just and proper under the circumstances.

**COUNT VI:**
**BREACH OF CONTRACT**

***(Defendant Timothy K. Ozark and the Timothy K. Ozark Revocable Trust)***

87.     The Receiver incorporates by reference Paragraphs 1 through 27, above, as though fully set forth herein.

88.     On or about January 15, 2001, Defendant Ozark entered into the LPA, by which he agreed to pay $500,000.00 (five hundred thousand dollars) for a limited partnership interest in Cardinal Growth.

89.     Defendant Ozark committed to make a capital contribution to Cardinal Growth in the amount of $500,000.00 (five hundred thousand dollars).

90.     The Counterpart Signature Page to the LPA signed by Defendant Ozark, and evidencing Defendant Ozark's commitment to make a capital contribution to Cardinal Growth in the amount of $500,000.00 (five hundred thousand dollars), is attached hereto as part of Group Exhibit 8, which is incorporated herein by reference.

91.     Subsequent to January 15, 2001, Defendant Ozark (individually) and Defendant Ozark (as trustee of the Defendant Trust) entered into an assignment agreement ("Ozark Assignment") wherein Defendant Trust purported to assume Defendant Ozark's $500,000.00 (five

-15-

hundred thousand dollars) share in Cardinal Growth and the accompanying capital commitment.

92.  Contemporaneous with the execution of the Ozark Assignment, Defendant Ozark (as trustee of the Defendant Trust) executed an additional Counterpart Signature Page, by which the Defendant Trust agreed to pay $500,000.00 (five hundred thousand dollars) for a limited partnership interest in Cardinal Growth.

93.  The Counterpart Signature Page to the LPA signed by Defendant Ozark (as trustee of the Defendant Trust), and evidencing the Defendant Trust's commitment to make a capital contribution to Cardinal Growth in the amount of $500,000.00 (five hundred thousand dollars), is attached hereto as part of Group Exhibit 8.

94.  By its terms, the Ozark Assignment purports to delay, reduce, terminate, or offset Defendant Ozark's personal obligation to contribute capital to the Partnership, thus requiring SBA's consent under LPA sections 5.05, 5.06, and 5.07 (quoted above, in pertinent part) before such assignment can take effect.

95.  Although Defendant Ozark sought CGLLC's approval of and consent to the Ozark Assignment, neither the consent nor the approval of SBA was ever sought or obtained as to the Ozark Assignment.

96.  The books and records of Cardinal Growth reflect the amount that each Private Limited Partner actually paid toward its capital contribution commitment.

97.  The books and records of Cardinal Growth reveal that neither Defendant Ozark nor the Defendant Trust has made the full capital contribution they agreed to make to Cardinal Growth.

98.  The books and records of Cardinal Growth show that, as to Cardinal Growth, Defendant Ozark and the Defendant Trust have an unfunded capital commitment amount of $125,000.00 (one hundred twenty five thousand dollars).

99.     Because Defendant Ozark and the Defendant Trust failed to pay their capital commitment, Cardinal Growth's General Partner and the Receiver have issued unfunded capital commitment demand letters, dated April 11, 2011; September 22, 2011; and March 5, 2012, demanding payment in the amount of $125,000.00 (one hundred twenty five thousand dollars) from the Defendant Trust and an additional demand, dated March 23, 2012, demanding payment in the amount of $125,000.00 (one hundred twenty five thousand dollars) from Defendant Ozark.

100.    Despite the Demands referenced in the immediately preceding Paragraph, neither Defendant Ozark nor the Defendant Trust has fully paid their capital commitment to the Receiver.

101.    Defendant Ozark and the Defendant Trust have breached the LPA by failing to pay to Cardinal Growth the entire amount they agreed to pay under the LPA.

102.    As a direct and proximate result of Defendant Ozark and the Defendant Trust's breach of the LPA, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant Ozark and the Defendant Trust, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against Defendant Ozark and the Defendant Trust, for their unfunded capital commitment of $125,000.00 (one hundred twenty five thousand dollars) pursuant to the capital call notice plus fifteen percent (15%) interest from April 27, 2011, together with costs, attorneys fees, and such other relief as this Court deems just and proper under the circumstances.

<u>**COUNT VII:**</u>
<u>**BREACH OF CONTRACT**</u>
***(Defendant Mark Carr)***

103.    The Receiver incorporates by reference Paragraphs 1 through 27, above, as though fully set forth herein.

104.    On or about March 9, 2000, Defendant Carr entered into the LPA, by which he

agreed to pay $100,000.00 (one hundred thousand dollars) for a limited partnership interest in Cardinal Growth.

105.    Defendant Carr committed to make a capital contribution to Cardinal Growth in the amount of $100,000.00 (one hundred thousand dollars) as set forth in Exhibit "A" to the LPA.

106.    The Counterpart Signature Page to the LPA signed by Defendant Carr, and evidencing Defendant Carr's commitment to make a capital contribution to Cardinal Growth in the amount of $100,000.00 (one hundred thousand dollars), is attached hereto as Exhibit 9, which is incorporated herein by reference.

107.    The books and records of Cardinal Growth reflect the amount that each Private Limited Partner actually paid toward his capital contribution commitment.

108.    The books and records of Cardinal Growth reveal that Defendant Carr has not made the full capital contribution he agreed to make to Cardinal Growth as set forth in Exhibit "A" to the LPA.

109.    The books and records of Cardinal Growth show that, as to Cardinal Growth, Defendant Carr has an unfunded capital commitment amount of $24,000.00 (twenty four thousand dollars).

110.    In order to ensure Defendant Carr paid his full capital commitment in accordance with Exhibit "A" of the LPA, Cardinal Growth's General Partner and the Receiver issued unfunded capital commitment demand letters, dated April 11, 2011; September 22, 2011; and March 5, 2012, demanding payment of the unfunded capital commitment from Defendant Carr.

111.    Despite the demands referenced in the immediately preceding Paragraph, Defendant Carr has not fully paid his capital commitment to the Receiver.

112.    Defendant Carr has breached the LPA by failing to pay to Cardinal Growth the entire amount he agreed to pay under the LPA.

-18-

113.     As a direct and proximate result of Defendant Carr's breach of the LPA, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant Carr, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against the defendant Private Limited Partner, Mark Carr, for his unfunded capital commitment of $24,000.00 (twenty four thousand dollars) pursuant to the capital call notice plus fifteen percent (15%) interest from April 27, 2011, together with costs, attorneys fees, and such other relief as this Court deems just and proper under the circumstances.

Dated:  May 27, 2012

By:   /s/ Arlene P. Messinger
     Arlene P. Messinger
     Office of General Counsel
     U.S. Small Business Administration
     409 Third Street, S.W., Seventh Floor
     Washington, D.C. 20416
     (202) 205-6857

By:   /s/ Thomas A. Smith
     Thomas A. Smith
     Thomas B. Keegan
     SENAK KEEGAN GLEASON
     SMITH & MICHAUD, LTD.
     550 West Jackson Blvd., Suite 1400
     Chicago, IL 60661
     (312) 214-1400

     *Attorneys for the United States Small Business Administration as Receiver for Cardinal Growth, L.P.*